**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Commodity Futures Trading Commission,<br><br>Plaintiff,<br><br>v.<br><br>Debiex, et al.,<br><br>Defendants. | No. CV-24-00117-PHX-DLR<br><br>**ORDER** |

Plaintiff Commodity Futures Trading Commission's ("CFTC") complaint accuses Defendant Debiex of engaging in a coordinated scheme to defraud U.S. customers ("Customers") in violation of the Commodity Exchange Act, 7 U.S.C. § 9(1) ("the Act"), and corresponding CFTC regulations ("Regulations"). Despite being served with a summons and the complaint (Docs. 13, 23), Debiex failed to appear and answer or otherwise respond to the complaint, prompting the CFTC to apply for and the Clerk of the Court to enter default against it (Docs. 24, 25.) Now before the Court is the CFTC's motion for entry of a default judgment against Debiex (Doc. 27), which will be granted.

The nature of Debiex's fraudulent scheme is detailed in the Court's order granting CFTC's motion for entry of a default judgment against Relief Defendant Zhang Cheng Yang ("Zhang") (Doc. 29) and is incorporated here. Throughout the Relevant Period, four Customers transferred at least $1,905,806 worth of digital assets to various digital asset wallets, which they thought belonged to Debiex. Another Customer transferred 367.304

ETH to various digital asset wallets that he believed belonged to Debiex. During the Relevant Period: (1) Customer A transferred digital assets valued at approximately $8,400 at the time of transfer; (2) Customer B transferred digital assets valued at approximately $967,018 at the time of transfer; (3) Customer C transferred digital assets valued at $677,888 at the time of transfer; (4) Customer D initially transferred 367.306 ETH (initially valued at $435,793), of which he received back $9,900. This retrieved amount diminished the value of digital assets Customer D transferred. A portion of Customer D's digital assets were traced by the CFTC and other law enforcement agencies. Specifically, 62.94155 ETH belonging to Customer D was traced to a digital asset wallet maintained at Exchange A that is owned and controlled by Relief Defendant Zhang. The larger portion of Customer D's digital assets could not be traced. Specifically, 304 ETH could not be traced. At the time of their transfer, the 304 ETH were valued at $361,430.92. Thus, Customer D's loss associated with the untraceable digital assets equates to $351,530.92 ($361,430.92 less the $9,900 returned); finally, Customer E transferred digital assets valued at approximately $252,50 at the time of transfer.

Whether to enter a default judgment is discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The Court may consider the following factors when deciding whether default judgment is appropriate: (1) the possibility of prejudice to the plaintiff, (2) the merits of the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of factual disputes, (6) whether default is due to excusable neglect, and (7) the policy favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In considering the merits and sufficiency of the complaint, the Court accepts as true the complaint's well-pled factual allegations. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). Although the Court should consider and weigh relevant factors as part of the decision-making process, it "is not required to make detailed findings of fact." *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). These factors favor entry of default judgment.

The CFTC's complaint alleges one count against Debiex: Fraud by deceptive device

or contrivance, in violation of Section 6(c)(1) of the Act, 7. U.S.C. § 9(1), and Regulation 180.1(a)(1) and (3), 17 C.F.R. § 180.1(a)(1) and (3). Section 6(c)(1) of the Act, makes it unlawful for any person, directly or indirectly, to:

> [U]se or employ, or attempt to use or employ, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate[.]

7 U.S.C. § 9(1), Regulation 180.1(a)(1) and (3), 17 C.F.R. § 180.1(a)(1), (3) provides:

> It shall be unlawful for any person, directly or indirectly, in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly:
>
> (1) Use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud;
>
> ….
>
> (3) Engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person[.]

The CFTC has shown that Debiex's unknown officers and/or managers violated these provisions by conducting a scheme to defraud customers in connection with the sale of contracts for the trading of digital asset commodities, including deceiving customers by intentionally or recklessly: (1) directing Solicitors to contact and establish phony relationships with Customers wherein they touted their knowledge or inside information that allowed them to earn huge profits trading in digital asset commodities and encouraged Customers to open trading accounts; (2) creating Debiex websites that mimicked the features of a legitimate trading platform; (3) directing Customer Service to make additional lies in order to maintain the illusion of a legitimate trading platform; (4) misappropriating digital assets valued at approximately $2.3 million; and (5) sending, or causing to be sent, false trading records to Customers.

Given Debiex's default, there are no genuine factual disputes that would counsel

against entry of default judgment. Absent entry of default judgment, the CFTC and the victim Customers "will likely be without other recourse for recovery." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Although the amount of money at stake is substantial, the relief sought by CFTC is both authorized by law and reasonable given the nature of the fraud. *See* 7 U.S.C. § 13a-1(d). There is no evidence that Debiex's failure to respond to the complaint is the result of "excusable neglect." And although cases "should be decided on their merits whenever reasonably possible" *Eitel*, 782 F.2d at 1472, the existence of Federal Rule of Civil Procedure 55(b) "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (citation omitted). Accordingly,

**IT IS ORDERED** that the CFTC's motion or entry of a default judgment against Defendant Debiex (Doc. 27) is **GRANTED** as follows:

1. Debiex has violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1) and (3);
2. Debiex, and its agents, servants, employees, assigns, attorneys, holding companies, alter egos, and persons in active concert or participation with it, including any of its successors, are permanently enjoined from directly or indirectly:
    a. engaging in conduct that violates 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1) and (3);
    b. trading on or subject to the rules of any registered entity (as that term is defined in 7 U.S.C. § 1a(40));
    c. entering into any transaction involving "commodity interests" (as that term is defined in 17 C.F.R. § 1.3(yy)) for their own personal account or for any account in which they have a direct or indirect interest;
    d. having any commodity interests traded on their behalf;
    e. controlling or directing trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

      f. soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

      g. applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring registration or exemption from registration with the CFTC, except as provided for in 17 C.F.R. § 4.14(a)(9);

      h. acting as a principal (as that term is defined in 17 C.F.R. § 3.1(a), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the CFTC, except as provided for in 17 C.F.R. § 4.14(a)(9); and

      i. engaging in any business activities related to commodity interests.

3. Debiex is ordered to pay, on a joint and several basis, restitution in the amount of $2,257,337.01, which reflects Customers' net losses, plus any post-judgment interest thereon (the "Restitution Obligation"). If the Restitution Obligation is not paid immediately, post-judgment interest shall accrue on the Restitution Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

4. The Court appoints the National Futures Association ("NFA") as Monitor to distribute any payments made against the Restitution Obligation to Debiex's Customers. The Monitor shall collect restitution payments from Debiex and make distributions as set forth below. Because the Monitor is acting as an officer of this Court in performing these services, NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

5. Debiex shall make Restitution Obligation payments under this Order to the Monitor in the name "Debiex Restitution Fund" and shall send such payments by electronic funds transfer, or by U.S. postal money order, certified check, bank

cashier's check, or bank money order, to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606, accompanied by a cover letter identifying Defendants and the name and docket number of this proceeding. Debiex shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

6. The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to Debiex's Customers identified by the CFTC, or may defer distribution until such time as the Monitor deems appropriate. In the event that the amount of Restitution Obligation payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative cost of making a distribution to eligible Customers is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the CFTC pursuant to the instructions for civil monetary penalty payments set forth below.

7. Debiex shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify Debiex Customers to whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any Restitution Obligation payments. Defendants shall execute any documents necessary to release funds that they hold in any repository, bank, investment, or other financial institution, wherever located, to make partial or total payment toward the Restitution Obligation.

8. The Monitor shall provide the CFTC at the beginning of each calendar year with a report detailing the disbursement of funds to Defendants' clients during the previous year. The Monitor shall transmit this report accompanied by a cover letter identifying the name and docket number of this proceeding to the Chief

Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

9. The amounts payable to each Customer shall not limit the ability of any client to prove that a greater amount is owed from Debiex or any other person or entity, and nothing herein shall be construed in any way to limit the rights of any client that exist under state or common law.

10. Pursuant to Federal Rule of Civil Procedure 71, each Customer who suffered a loss is made an intended third-party beneficiary of this Order and may seek to enforce this Order to obtain satisfaction of any portion of the Restitution Obligation that has not been paid by Debiex, to ensure continued compliance with any provision of this Order, and to hold Debiex in contempt for any violations of any provision of this Order.

11. To the extent that any funds accrue to the U.S. Treasury for satisfaction of the Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

12. Debiex shall pay, jointly and severally, a civil monetary of $221,466 ("CMP Obligation"). If the CMP Obligation is not paid within 30 days of entry of this order, then post-judgment interest shall accrue on the full CMP Obligation beginning on the date of entry of this Order and shall be determined pursuant to 28 U.S.C. § 1961.

13. Debiex shall pay the CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

MMAC/ESC/AMK326
Commodity Futures Trading Commission
Division of Enforcement
6500 S. MacArthur Blvd.

Oklahoma City, OK 73169
(405) 954-6569 office
(405) 954-1620 fax
9-AMC-AR-CFTC@faa.gov

14. If payment by electronic funds transfer is chosen, Debiex shall contact Marie Thorne or her successor at the address above to receive payment instructions and shall fully comply with those instructions. Debiex shall accompany payment of the CMP Obligation with a cover letter identifying Debiex and the name and docket number of this proceeding. Debiex shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

15. Acceptance by the CFTC or the Monitor of any partial payment of either the Restitution Obligation or the CMP Obligation shall not be deemed a waiver of Debiex's obligation to make further payments pursuant to this Order, or a waiver of the CFTC's right to seek to compel payment of any remaining balance.

16. The injunctive and equitable relief provisions of this Order shall be binding upon Debiex, upon any person under their authority or control, and upon any person who receives actual notice of this Order, by personal service, email, facsimile or otherwise insofar as he or she is acting in active concert or participation with Debiex.

17. If any provision of this Order or if the application of any provision or circumstance is held invalid, then the remainder of this Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

18. Consistent with the Court's order at Docket Entry 29, all cryptocurrency held in Zhang's digital asset account with Exchange A, including with the deposit cryptocurrency wallet address 0x01c04937dcf5005b816b465282db8fdcedeeb5ef in the custody of Exchange

A, subject to and excluding any tokens below any reasonable minimum withdrawal amount imposed by Exchange A, be sent to Ethereum wallet address 0x2f57eeE8C304CDfdE848028a6C89AC00B364B004, which belongs to Customer D. More specifically, the following tokens shall be transferred:

| Digital asset/Token | Balance |
|---|---|
| ETH (Ether) | 62.94155 |
| USDT (Tether) | 5.7041258 |

19. The Clerk of the Court shall enter judgment accordingly and terminate this case.

Dated this 12th day of March, 2025.

Douglas L. Rayes
Senior United States District Judge